IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SPEROS PANAGOULAKOS,**

    **Plaintiff,**

v.                                                                             CIV 11-0381 KBM/WDS

**Albuquerque Police Department Officer,
PATRICIA YAZZIE,
Albuquerque Police Department Officer
Lieutenant RICARDO GALINDO, and
THE CITY OF ALBUQUERQUE,**

    **Defendants.**

# AMENDED MEMORANDUM OPINION AND ORDER
# WITH REFERENCED APPENDIX

    THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment *(Doc. 60)* and Plaintiff's Cross-Motion for Partial Summary Judgment *(Doc. 76)*. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Doc. 12*. Having reviewed the parties' submissions and the relevant law, and having heard oral arguments on November 6, 2012, I find both motions to be well taken in part.

    I will grant partial summary judgment in favor of Defendants on Counts I and II to the extent they are based on Plaintiff's initial arrest and seizure of his vehicle and firearm. Because it is undisputed that Officer Galindo's involvement in the case was limited to those events, he is entitled to summary judgment on all claims against him. I will grant summary judgment to Plaintiff on Counts I and II as against Defendant Yazzie as to liability insofar as they are based

upon Plaintiff's continued detention after she had the opportunity to examine the Order of Protection and deny her qualified immunity because the violation of law was clearly established. I will grant summary judgment for Defendants on the alleged violation of due process claim because such a claim arises only after the institution of legal process.

Further, because the facts have not been sufficiently addressed regarding Count IV, which alleges negligent hiring, training and retention by the City of Albuquerque under the New Mexico Tort Claims Act, it will survive summary judgment at this juncture. Finally, any claim for punitive damages against the City of Albuquerque, whether under § 1983 or under the New Mexico Tort Claims Act, will be dismissed.

## I.   BACKGROUND

This lawsuit arises out of a lawful traffic stop by Defendant Galindo of Plaintiff Speros Panagoulakos on July 8, 2010. *See Doc. 60* at 2, ¶1; *Doc. 76* at 3, ¶1. The material facts are undisputed. During the stop, Plaintiff voluntarily apprised Defendant Galindo that he had a firearm in the vehicle. *See Doc. 60* at ¶2; *Doc. 76* at 3, ¶1. Defendant Galindo then ran his routine checks, including a check of the National Crime Information Center ("NCIC") database, which revealed that a valid protective order was in force against Plaintiff. The NCIC report further stated:

> ****THE SUBJECT OF THIS RECORD IS PROHIBITED FROM RECEIVING OR POSSESSING A FIREARM UNDER FEDERAL LAW (TITLE 18, U.S.C., SECTION 922)****

*See Doc. 60-4* at 4; *Doc. 60-5*. The NCIC report also cautioned:

> *****WARNING – THE FOLLOWING IS AN NCIC PROTECTION ORDER RECORD.  DO NOT SEARCH, DETAIN, OR ARREST BASED SOLELY ON THIS RECORD. CONTACT ENTERING AGENCY TO CONFIRM STATUS AND TERMS OF PROTECTION ORDER*****

2

*See id.* Plaintiff confirmed for Defendant Galindo that he was subject to a current protective order, but told him that the hearing officer had indicated that he was permitted to carry a firearm. *See Doc. 60* at 2, ¶3.

Defendant Galindo testified that APD procedure after discovery an NCIC hit is to contact "county warrants," which holds all the documents, and verify that a warrant or protection order is valid prior to arrest. *See Doc. 60-1* at 3. County warrants confirmed the existence of a valid protection order against Plaintiff in this case. *See Doc. 60* at 3, ¶ 10. Defendant Galindo also contacted Domestic Violence Sergeant Paul Szyche to verify that the protection order was in place and "to make sure that it was within [APD's] policy" to effectuate an arrest for possession of a firearm in the absence of other violations of a protective order. *See Doc. 60-1* at 4-5.

Because Plaintiff had told Defendant Galindo that he was specifically allowed to carry a firearm under the terms of the protection order, Defendant Galindo instructed assisting Officer Patricia Yazzie to take Plaintiff to the substation and verify that the order was still valid as well as examine the protection order for any indication that Plaintiff was permitted to possess a firearm. *See Doc. 60-1* at 3. At the substation, Defendant Yazzie indeed obtained and reviewed a copy of the stipulated order of protection.

The Order clearly established that its terms were effective for one year, that is, until January 20, 2011. As such, there is no dispute that the Order was in effect at the time of Plaintiff's arrest. However, Officer Yazzie has testified that after reviewing the document, she determined that "there was no indication in the order that Plaintiff was permitted to possess a firearm." Doc. 60-2 at 3. She then prepared her criminal

complaint alleging a violation of the Order. Plaintiff remained in custody for eleven days until the District Attorney's office unilaterally dismissed the case when Plaintiff was found to have not violated any Order or law..

With one notable exception, the protection order at issue tracks the language of the New Mexico Supreme Court-approved Civil Form 4-471. The exception is that certain language in the approved-form phrase – "check only applicable paragraphs" – is omitted from the section in which the court sets forth its findings, conclusions and orders.

The first page of the protection order at issue, *see* Appendix, characterizes Plaintiff's relationship to the protected party simply as an "ex-boyfriend." Under the heading, "THE COURT HEREBY ORDERS," the court set forth the following:

- [✓]  That the above named Restrained Party be restrained from committing ~~further~~ acts of abuse or threats of abuse.
- [✓]  That the above named Restrained Party be restrained from any contact with the Protected Party.
- [✓]  Additional terms of this order are as set forth on succeeding pages.

*Doc. 60-6* at 1. Immediately after that, the order of protection cautions:

> WARNINGS TO RESTRAINED PARTY:
> As a result of this order, it *may* be unlawful for you to possess or purchase ammunition or a firearm, including a rifle, pistol or revolver, under 18 U.S.C. Section 922(g)(8). If you have any questions whether federal law makes it illegal for you to possess or purchase a firearm, you should consult an attorney. Only the court can change this order.

*Doc. 60-6* (emphasis added). Other relevant portions of the order are set forth on the second page of the five-page document. Under the heading "EFFECT OF STIPULATION TO ORDER OF PROTECTION," the order states:

> The court further FINDS, CONCLUDES AND ORDERS:
>
> 1. NOTICE, APPEARANCES AND STATUS
>
>    This order was entered on stipulation of the parties.

> [ ] **The relationship of the parties is that of an "intimate partner" as defined in 18 U.S.C. Section 921(a)(32). *(See 2 below)***
>
> 2. EFFECT OF STIPULATION TO ORDER OF PROTECTION
>
> > Violation of this order can have serious consequences, including:
> > A. . . .
> > B. If you are the spouse or former spouse of the other party, an individual who cohabitates with or has cohabitated with the other party, or if you and the other party have had a child together, federal law prohibits you from possessing or transporting firearms or ammunition while this order is in effect. If you have a firearm or ammunition, you should immediately dispose of the firearm or ammunition. Violation of this law is a federal crime punishable by imprisonment for up to ten (10) years and a fine of up to two hundred fifty thousand dollars ($250,000).

*Doc. 60-6* at 2 (emphasis added).

Accordingly, nothing within the four corners of the Order of Protection indicated that the issuing court had found Plaintiff and his ex-girlfriend to be "intimate partners" because that box was not checked. This is significant because, under federal law, such a finding is required in order to limit a restrained party's right to possess a firearm. *See* 18 U.S.C. § 922(g)(8). Indeed, as the parties now agree, the Order did not restrict Plaintiff's ability in any way to lawfully possess a firearm because the Court did not make an "intimate partner" finding.

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A mere scintilla

of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. FED. R. CIV. P. 56(c)(1)(A) (emphasis added). Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)).

Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). The court need only consider the materials cited by the parties. FED. R. CIV. P. 56(c)(3). In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment. FED. R. CIV. P. 56(e). The court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond. FED. R. CIV. P. 56(f).

### III. ANALYSIS

    **A.    Plaintiff Has Come Forward with Sufficient Evidence of Alleged Intentional and Deliberate, as Opposed to Merely Negligent, Actions by Defendants**

Defendants first contend that Plaintiff in the present case has, at best, come forward with evidence of negligence on the part of the involved officers. Since mere negligence cannot support a cause of action under 42 U.S.C. § 1983, Defendants argue that Plaintiff's claims should be dismissed with prejudice. *See Doc. 60* at 5-6.

Defendants rely on *Apodaca v. Rio Arriba County Sheriff's Dept*., which involved an accidental collision between an officer who was responding to a silent burglar alarm and a family who was driving out of a restaurant parking lot. *See* 905 F.2d 1445, 1446 (10th Cir. 1990). The plaintiff in *Apodaca* alleged an illegal seizure of their daughter, who died as a result of the accidental collision. *See id.* The Tenth Circuit granted summary judgment in favor of the defendants because "a seizure must be 'willful' to be actionable under the Fourth Amendment." *Id.* (citing *Brower v. County of Inyo*, 489 U.S. 593 (1989)). Here, there is no question that Officers Galindo and Yazzie intentionally and willfully seized Plaintiff and his property. Thus, *Apodaca* is easily distinguishable. This is not a case of mere negligence on the parts of Defendants.

The present case is equally distinguishable from *Bober v. New Mexico State Fair*, 808 P.2d 614 (N.M. 1991). *See Doc. 60* at 17-18. In *Bober*, the New Mexico Supreme Court found that immunity under the New Mexico Tort Claims Act was not waived for the New Mexico State Police Department's alleged negligent direction of traffic following a rock concert. *See* 808 P.2d at 623-24. While Tort Claims Act liability could theoretically exist for a law enforcement officer who negligently failed to act to prevent harm inflicted by a third party, the Court recognized that "no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section." *Id.* at 624.

Unlike the allegations in *Apodaca* and *Bober*, Plaintiff's claims in the present case arise from the willful, intentional acts of Defendants Galindo and Yazzie. I will therefore decline to grant summary judgment in favor of Defendants on the grounds that Plaintiff has alleged mere negligence.

> **B.   Lieutenant Galindo and Officer Yazzie Are Entitled to Qualified Immunity With Respect to Plaintiff's Initial Arrest Up Until The Time There Was An Opportunity to Examine the Actual Order of Protection.**

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Thus, to avoid judgment for the defendant based on qualified immunity, 'the plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant actually violated were clearly established at the time of the conduct at issue.'" *Toevs v. Reid*, 683 F.3d 903, 909 (10th Cir. 2012) (quoting *Steffey v. Orman*, 461 F.3d 1218, 1221 (quotation omitted). *See also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Only if the plaintiff has satisfied both steps is qualified immunity defeated." *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012).

Plaintiff alleges three violations of federal constitutional rights by the officers: (1) false arrest/false imprisonment in violation of the Fourth and Fourteenth Amendments; (2) unreasonable seizure in violation of the Fourth Amendment; and (3) denial of due process in violation of the Fourteenth Amendment Due Process Clause related to his continuing detention. *See generally* Doc. 1. Plaintiff also alleges negligent hiring, training and retention against the City pursuant to the New Mexico Tort Claims Act. *See id.* at 12-13. Defendants seek summary

judgment as to all of Plaintiff's constitutional claims on the grounds that there was probable cause for Plaintiff's arrest or, in the alternative, that Defendants acted in good faith and based upon reasonable beliefs.  *See Doc. 60* at 2.

### 1.     *Plaintiff's Arrest and Seizure of his Property Were Initially Supported by Probable Cause*

The Fourth Amendment prohibits police from arresting someone without either a warrant or probable cause.  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (citing *Tennessee v. Garner*, 471 U.S. 1, 6-8 1985)).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Id.* (quoting *Jones v. City & County of Denver, Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988)).  "Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion, and to develop probable cause for an arrest."  *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995).

At the scene of the traffic stop, without any prompting, Plaintiff brought to the officers' attention that he was in possession of a firearm.  Following routine procedure, Officer Galindo ran certain checks, including an up-to-date NCIC report, which indicated an active protection order out of Bernalillo Country and expressly stated, "The subject of this record is prohibited from receiving or possessing a firearm under federal law (Title 18, U.S.C. Section 922)."  *See Doc. 60-4* at 4.  Based upon that information, Plaintiff Panagoulakos was arrested pursuant to NMSA 1978, § 40-13-6, on suspicion of violating an state court-issued order of protection.  In relevant part, that statute provides that "[a] peace officer shall arrest without a warrant and take into custody a restrained party whom the peace officer has probable cause to believe has violated

an order of protection that is issued pursuant to the Family Violence Protection Act." NMSA 1978, § 40-13-6(D).

I find that the NCIC report, especially when coupled with the officers' steps taken at the scene to verify the report and Plaintiff's acknowledgment that he was subject to a protective order (although he disputed its terms), sufficiently established probable cause for Plaintiff's arrest and seizure of his vehicle and firearm. *See, e.g., Scull v. New Mexico*, 236 F.3d 588 (10th Cir. 2000) (affirming summary judgment on grounds of qualified immunity where the defendants "believed they had the lawful authority to imprison Mr. Reed based on the NCIC hit"); *United States v. Hines*, 564 F.2d 925, 927 (10th Cir. 1977), *cert. denied*, 98 S. Ct 748 (1978) (stating that "information received from the NCIC computer bank has been routinely accepted in establishing probable cause for a valid arrest"). *See also Ramirez v. City of Wichita*, 78 F.3d 597 (Table), 1996 WL 98807, at *3 (10th Cir. 1996) (holding that NCIC information was sufficient to provide probable cause for an arrest such that the arresting offers were entitled to qualified immunity and noting that decisions from the Fifth, Seventh, Second, and Third Circuit Courts of Appeal were in accord).

Plaintiff contends that Defendants were without authority to arrest him despite the NCIC information because the NCIC report indicated a violation of federal, not state, law. They argue that state law enforcement officers are not empowered to arrest for violations of federal law where no state law is implicated. Neither counsel for the parties nor I have been able to locate any authority in support of or in opposition to this contention. It certainly seems problematic that a state law enforcement officer would be without authority to arrest an individual for possession of a firearm when it was in true violation of 18 U.S.C. § 922(g)(8) pursuant to the terms of an Order of Protection. Even if Plaintiff is correct that state officers have authority to

arrest only for state law violations, arguably an officer could reasonably believe that an order of protection's repeated reference to 18 U.S.C. § 922(g)(8) and the court's setting forth of the requisite findings under federal law incorporate a prohibition of firearm possession.

Because the arresting officers here reasonably believed the NCIC report that the state Order of Protection barred possession of a firearm and reasonably confirmed the validity of the Order of Protection, they had probable cause to effectuate the arrest. Even if I am incorrect in this regard, Defendants are nonetheless entitled to qualified immunity because no law to the contrary was clearly established at the time of Plaintiff's arrest.

### 2. *Defendant Yazzie's Continued Detention of Plaintiff After Reviewing the Order of Protection Was Unlawful*

Upon arrival at the police substation with Plaintiff in custody, Officer Yazzie was presented with additional relevant information – a copy of the actual underlying Order of Protection – **before** she prepared the criminal complaint. *See Doc. 79-2* (Complaint stating "A copy of the restraining order was later faxed to Southeast substation by N.C.I.C. There was no indication in the order that Mr. Panagoulakos was allowed to have possession of firearm[s]"). The issue now presented is whether a review of that order would have revealed to a reasonable officer that the order itself did not prohibit possession of a firearm by Plaintiff. If the answer is yes, that information dissipated probable cause for Plaintiff's continued detention and continued detention resulted in a violation of the Fourth and Fourteenth Amendments. *See Hernandez v. Story*, 459 Fed. Appx. 697, 699 (10th Cir. 2012) ("it is surely the case that probable cause can be negated by information allegedly and unlawfully disregarded by the defendant-officers. The presence or absence of probable cause in these circumstances is determined by the objective inquiry of 'examining the affidavit [or proceedings] as if the omitted information had been

included and inquiring if the affidavit [or proceedings] would still have given rise to probable cause.'") (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir.1996)).

Under federal law, it is unlawful for the subject of a restraining order to bear arms only where three conditions are met: (a) there is a court order issued with actual notice and an opportunity to participate; (b) the order restrains such person from harassing, stalking, or threatening an "intimate partner;" and (c) the order includes a finding that the subject "represents a credible threat to the physical safety of such intimate partner" or "explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner … that would reasonably be expected to cause bodily injury." *See* 18 U.S.C. § 922(g)(8). As discussed above, the order made no finding of an "intimate partner" relationship and a reasonable officer would have understood that by its terms, Plaintiff's right to bear arms was not restricted. Officer Yazzie admitted to being unaware that federal law requires a finding of "intimate partners" to trigger such a prohibition. *See Doc. 60-2* at 3. Thus, a finding of "intimate partners" or lack thereof was irrelevant in her mind.

Indeed, Defendant Yazzie testified that she thought ***all*** state orders of protection barred the restrained individual from possession of a firearm. At her deposition, Defendant Yazzie testified as follows:

> Q. Is there a law that prevented everybody who had an order of protection issued against them from possessing a firearm?
>
> MR. CASH: Objection, form.
>
> MR. ALLEN: Objection.
>
> THE WITNESS: Do I still answer?
>
> MR. CASH: Yeah. Any time we object, you can still answer unless I specifically tell you not to.

>       THE WITNESS: Sorry. That's the way that I believe I took it, yes.

*Doc. 60-2* at 3. When asked if she arrested Plaintiff for violation of federal law as opposed to state law, Defendant Yazzie indicates the arrest was pursuant to state law, for "the statute for violation of the restraining order." *Id.* Officer Gallindo also testified, "We were not arresting under federal law," and indicated the arrest was based on a violation of a county protection order. *Doc. 60-1* at 4.

The New Mexico Family Violence Protection Act does not make it a *per se* violation of an Order of Protection for a restrained party to possess or carry a firearm, however. *See* NMSA 1978, § 40-13-6(D). Likewise, the Order of Protection at issue in this case does not indicate that it constitutes a violation of the Order for Plaintiff to possess or carry a firearm. *See generally Doc. 60-6*. Rather, the Order indicates only that "it *may* be unlawful for [the restrained party] to possess or purchase ammunition or a firearm" and instructs the restrained party to consult a lawyer if s/he has "any questions whether federal law makes it illegal for you to possess or purchase a firearm." *Id.* at 1. Erroneously assuming that Plaintiff was automatically prohibited from carrying a firearm by state law, Defendant Yazzie's examination of the actual Order was limited to looking for some notation that Plaintiff was "exempted" from what she thought was an automatic prohibition.

I find that Defendant Yazzie's erroneous understanding of the law resulted in continued detention without legal authority. Moreover, a reasonable officer would have understood that the probable cause relied upon for the arrest had dissipated based on new absolute information dispelling a required element for the arrest and continuing prosecution. Defendants argue that Officer Yazzie's misunderstanding of the effect of an order of protection law constitutes mere negligence and cannot support a constitutional violation. Although a reasonable mistake of fact

might support a finding of probable cause, an unreasonable mistake of the law by an officer sworn to enforce it cannot. *See Beier v. City of Lewiston*, 354 F.3d 1058, 1071-72 (9th Cir.2004) (officer who had not reviewed a Protection Order and arrested on the basis of a mistaken understanding of the order lacked probable cause and forfeited immunity); *see also Azam v. Johnson*, 2007 WL 404814, 4-5 (N.D.Cal. 2007) ("Probable cause cannot be established by an erroneous understanding of the law. While an officer may have reasonable suspicion or probable cause even where his reasonable understanding of the facts turns out to be mistaken, a mistake about what the law requires cannot justify an arrest under the Fourth Amendment.").

Nonetheless, "the defendant may be mistaken and still be entitled to qualified immunity if he or she is reasonably mistaken in light of the law and facts." *Axson-Flynn v. Johnson*, 3456 F.3d 1277, 1300 (10th Cir. 2004), citing *Saucier v. Katz*, 533 U.S. 194, 204 (2001). At the time Officer Yazzie examined the Order, the clear language of the N.M.S.A. § 40-13-6 provides no indication that a state court issued order of protection automatically bars the possession of firearms. Likewise, federal law was clear as to the elements required to be found by a court to trigger a violation of 18 U.S.C. § 922(g)(8) for such possession. Here, the applicable state and federal law were not ambiguous and both have been clearly established law for a long time.

Thus, I find that Officer Yazzie who was mistaken about the lawfulness of her conduct is not entitled to qualified immunity because the mistake is unreasonable in view of applicable law and the facts known at the time. *See Axson-Flynn v. Johnson*, 356 F.3d 1277, 1300 (10th Cir. 2004); *see, e.g., Shroff v. Spellman*, 604 F.3d 1179, 1190 (10th Cir. 2010) (holding that to determine whether a right is "clearly established," a court must find that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). The face of the

actual Order of Protection vitiated the probable cause that existed at the time of Plaintiff's initial arrest, and Plaintiff was therefore unlawfully detained.

**3.     The Undisputed Facts do not Support a Violation of Due Process**

In Count III, Plaintiff alleges that his rights to due process under the Fourteenth Amendment were violated. However, such a § 1983 claim is analogous to a state tort claim for malicious prosecution which arises only *after* the institution of legal process - when the defendant is bound over by a magistrate or arraigned on charges. *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir.2008). As the Tenth Circuit stated, "the tort of false arrest/false imprisonment arises out of detention without legal process, whereas the tort of malicious prosecution arises out of detention after the wrongful institution of legal process." *Young v. Davis*, 554 F.3d 1254, 1257 (10th Cir. 2009), citing *Wallace v. Kato*, 549 U.S. 384 (2007)("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."). Count II will be dismissed.

**D.     Plaintiff is Not Entitled To Punitive Damages Against The City of Albuquerque As a Matter of Law.**

Long established law holds that municipalities, such as Defendant City of Albuquerque, are immune from punitive damages under 42 U.S.C. § 1983. *See Newport v. Fact Concerts*, 453 U.S. 247 (1981); *Dill v. City of Edmond*, 155 F.3d 1193, 1210 (10th Cir. 1998). Also, under the New Mexico Tort Claims Act, a city's immunity from punitive damages claims has not been waived.

IV. **CONCLUSION**

At the time of Plaintiff's arrest pursuant to the traffic stop, the officers reasonably believed, based upon the NCIC report, that Plaintiff was prohibited by the terms of the Order of Protection from possessing a firearm. Accordingly, Defendants had probable cause to arrest Plaintiff given his admission that he possessed the firearm. Summary judgment will therefore be entered for Defendants on Counts I and II, insofar as they are based on the initial arrest of Plaintiff and seizure of his property.

Upon examination of the actual Order of Protection, an adequately trained, reasonable officer would have understood that the terms of the Order did not trigger a firearm prohibition. Under the undisputed facts, Defendant Yazzie examined the Order prior to the preparation of the criminal complaint. Her erroneous understanding of the state law she sought to enforce caused her to disregard the actual terms of the Order and resulted in Plaintiff's continued unlawful detention. Therefore, as a matter of law, I find that Defendant Yazzie violated Plaintiff's clearly established constitutional rights in violation of the Fourth and Fourteenth Amendment. Because that law was clearly established, her motion for qualified immunity will be denied. Plaintiff will have the opportunity to prove his damages at trial.

Defendants are entitled to summary judgment on Count III. Although the City is entitled to summary judgment on any claim for punitive damages, at this time, the Court declines to grant summary judgment for the City on Count IV.

Wherefore**,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment *(Doc. 60)* and Plaintiff's Cross-Motion for Partial Summary Judgment *(Doc. 76)* are hereby granted in part and denied in part as follows:

Summary judgment is granted for Defendants on Counts I and II insofar as they are based on the initial arrest of Plaintiff and seizure of his property.

Summary judgment is granted to Plaintiff on Counts I and II as to liability against Officer Yazzie based on her undisputed actions after reviewing the Order of Protection, and qualified immunity is denied.

Summary judgment is granted for Defendants on Count III.

All punitive damages claims against the City will be dismissed.

In all other respects, the motions are denied.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE